UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:25-wi-00025 ZMB |
| ) | |
| SHAZIA MALIK, M.D., ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, Shazia Malik, M.D. (the "defendant"), represented by defense counsel Michelle Nasser, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 and 2 of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's conduct, of which the Government is aware at this time. The defendant also agrees, at the time of

1

sentencing, to surrender her Drug Enforcement Administration ("DEA") registration ending in 0931 by executing a Form DEA-104.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that they will jointly recommend a sentence to a term of one year of probation, which is anticipated to be within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

The defendant also agrees, pursuant to the guilty plea to Counts 1 and 2, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offenses.

**3. ELEMENTS:**

As to Counts 1 and 2, the defendant admits to knowingly violating Title 18, United States Code, Section 1035, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant made a statement or representation in a matter involving a health care benefit program;

*Two*, the statement or representation was in connection with the delivery of or payment for health care benefits, items or services;

*Three*, the statement or representation was material to the health care benefit program;

*Four*, the statement or representation was false, fictitious, or fraudulent, and

*Five*, the defendant made the false, fictitious, or fraudulent statement knowingly and willfully.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### The Defendant

a.   The defendant admits that, at all relevant times, she was a psychiatrist, licensed to practice medicine in the state of Missouri. Throughout her time as a psychiatrist, the defendant has been affiliated with and practiced at various businesses, including Psych Care Consultants, L.L.C. ("PCC") and Serenity Health LLC ("Serenity").

### The Medicare Program

b.   The United States Department of Health and Human Services, through the Centers for Medicare & Medicaid Services ("CMS"), administers the Medicare program, which is a federal health benefit program within the meaning of 18 U.S.C. § 24(b) that affects interstate commerce and provides the elderly and disabled with medical benefits, items, and services.

c.   To receive Medicare reimbursement, providers must submit an appropriate application and execute a written provider agreement, which obligates the provider to know, understand, and follow all Medicare regulations and rules.

d.   The defendant admits that, at all relevant times, Medicare relied on the truthfulness of information submitted to it in claims for payment in its determination of whether or not to reimburse any given claim; Medicare required its enrolled providers to provide truthful information in their claims for payment and supporting medical documentation. The defendant

further admits that, at all relevant times, Medicare did not reimburse claims for services outside of the United States.

e. The defendant admits that, at all relevant times, she was an enrolled Medicare provider. The defendant further admits that, over the years, she filled out several Medicare provider applications in which she certified, individually or through one of the businesses with which she was affiliated, that she would comply with all Medicare laws, regulations, and program instructions and that she would not knowingly present or cause to be presented false or fraudulent claims for payment by Medicare.

### The Medicaid Program

f. MO HealthNet administers the Missouri Medicaid program, which is jointly funded by the State of Missouri and, through CMS, the federal government. Missouri Medicaid is a health care benefit program within the meaning of 18 U.S.C. § 24(b) that affects interstate commerce and provides low-income citizens of Missouri with medical benefits, items, and services.

g. The Missouri Medicaid program reimburses enrolled providers for covered services provided to Medicaid recipients that are reasonable and medically necessary. The defendant admits that, at all relevant times, the Missouri Medicaid program relied on the truthfulness of information submitted to it in claims for payment in its determination of whether or not to reimburse any given claim; the Missouri Medicaid program required its enrolled providers to provide truthful information in their claims for payment and supporting medical documentation. The defendant further admits that, at all relevant times, Missouri Medicaid did not reimburse claims for services outside of the United States.

h. To enroll in the Missouri Medicaid program, a provider must enter into a written agreement with MO HealthNet to receive reimbursement for medical services to Medicaid

4

recipients and must agree to abide by MO HealthNet's regulations in rendering and billing for those services.

i. The defendant admits that, at all relevant times, she was enrolled as a Missouri Medicaid provider and authorized to submit claims for payment to the Missouri Medicaid program. The defendant further admits that, in her original and subsequent agreements with MO HealthNet, she certified that it was her responsibility to ensure she submitted honest and accurate claims for payment and that she would comply with all Medicaid rules.

### Private Health Care Insurers

j. At all relevant times, private health care insurers, such as Anthem Blue Cross Blue Shield of Missouri ("Anthem"), Aetna Health Inc. ("Aetna"), Cigna Healthcare ("Cigna"), Humana, and United Health Care/Optum ("UHC") were health care benefit programs within the meaning of 18 U.S.C. § 24 that affected interstate commerce and reimbursed providers for medically necessary and reasonable services that complied with their rules and guidelines.

k. The defendant admits that, at all relevant times, Anthem, Aetna, Cigna, Humana, and UHC (collectively, the "Private Health Care Insurers") relied on the truthfulness of information submitted to them in claims for payment in their determinations of whether or not to reimburse any given claim; the Private Health Care Insurers required their enrolled providers to provide truthful information in their claims for payment and supporting medical documentation. Further, the defendant admits that, at all relevant times, the Private Health Care Insurers generally followed Medicare rules and guidelines, including that claims for services outside of the United States are not reimbursable.

l. The defendant admits that, at all relevant times, she, individually or through one or more businesses with which she was affiliated, submitted or caused to be submitted claims for payment to the Private Health Care Insurers.

### Submission of Fraudulent Claims for Payment to
### Medicare, Medicaid, and the Private Health Care Insurers

m. The defendant admits that, on or about December 25, 2019, she left the St. Louis, Missouri area and traveled to Pakistan. The defendant admits that she did not return to St. Louis until on or about February 24, 2020.

n. The defendant admits that she caused to be submitted claims for payment to Medicare, Medicaid, and the Private Health Care Insurers that falsely represented that she had conducted services from December 25, 2019 to February 24, 2020 that complied with those insurers' reimbursement rules, including those insurers' rules prohibiting claims for services outside of the United States. The defendant admits that she caused Medicare, Medicaid, and the Private Health Care Insurers to be billed for services that failed to comply with those insurers' reimbursement requirements.

o. For instance, as the defendant admits, she represented in a claim for payment submitted to Medicare on or about December 8, 2020, that she performed a reimbursable telemedicine visit with the patient in the office, plus a psychotherapy visit, with patient J.J. on January 27, 2020, when she was in Pakistan and, therefore, her services were not reimbursable.

p. The defendant admits that, as a result of the conduct described in paragraphs m through o, above, she was responsible for causing a total loss of $3,110.85 to Medicare, Medicaid, and the Private Health Care Insurers, as set forth below:

| Payor | Amount Paid |
|---|---|
| Medicare | $409.81 |

| Payor | Amount Paid |
|---|---|
| Medicaid | $40.00 |
| UHC | $1,959.04 |
| Aetna | $349.40 |
| Anthem | $220.25 |
| Cigna | $110.86 |
| Humana | $21.49 |

### Counts 1 and 2

q. The defendant admits that, on or about the date listed below, in St. Louis, Missouri, in the Eastern Division of the Eastern District of Missouri and elsewhere, she knowingly and willfully caused materially false writings and documents to be made and used, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services involving the Medicare program, a health care benefit program as defined in 18 U.S.C. § 24(b), in violation of 18 U.S.C. § 1035, in that the defendant caused to be falsely stated and represented in a claim for payment that she rendered reimbursable services to patient J.J. when, in fact, she did not, as she was in Pakistan on the date of service, and the service was therefore not reimbursable, as follows:

| Count | Rendering Provider | Patient | Date Claim Submitted | Service Date | Service Code | Service Description | Amount Billed |
|---|---|---|---|---|---|---|---|
| 1 | Shazia Malik | J.J. | 12/8/2020 | 1/27/2020 | 99213 | Established patient office or other outpatient visit | $140.00 |
| 2 | Shazia Malik | J.J. | 12/8/2020 | 1/27/2020 | 90833 | Psychotherapy with evaluation and management | $80.00 |

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

## 6. U.S. SENTENCING GUIDELINES (2025 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

   a. **Chapter 2 Offense Conduct:**

   (1) **Base Offense Level:** The parties agree that the base offense level is 6, as found in Section 2B1.1.

   (2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

   b. **Chapter 3 and 4 Adjustments:**

   (1) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the

court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Adjustment for Certain Zero-Point Offenders**: If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

(3) **Other Adjustments**: The parties agree that the following additional adjustments apply: The parties agree that 2 levels should be added, pursuant to Section 3B1.3, because the defendant abused a position of public trust.

c. **Estimated Total Offense Level**: If the Court applies a two-level reduction under Section 4C1.1(a) based on the Court's determination of the defendant's criminal history, the parties estimate that the Total Offense Level is 4.

d. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of a term of probation. Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

   **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

   **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment, and the parties stipulate that the amount of restitution as to the defendant is $3,110.85.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of

12

$3,110.85. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the

waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

12/11/25
Date

AMY E. SESTRIC, #66219MO
Assistant United States Attorney

12. 11. 2025
Date

SHAZIA MALIK, M.D.
Defendant

12/11/2025
Date

MICHELLE NASSER, #68952MO
Attorney for Defendant

15